## INHABITANTS OF WORCESTER *vs.* THE WESTERN RAIL ROAD CORPORATION.

The Western Rail Road Corporation are not liable to be taxed for the land, not exceeding five rods in width, over which they were authorized to lay out their road, nor for buildings and structures thereon erected by them, if such buildings and structures are reasonably incident to the support of the road or to its proper and convenient use for the carriage of passengers and property — such as houses for the reception of passengers, engine houses, car houses and depôts for the convenient reception, preservation and delivery of merchandize carried on the road.

SHAW, C. J. In a petition to this court for a writ of *certiorari* to the county commissioners, the inhabitants of Worcester set forth, that they are aggrieved by the doings of the commissioners, and pray redress. The petition states that the Western Rail Road Corporation have erected and are the owners of several valuable buildings, situated in the town of Worcester, to wit, a house for a passenger depôt, a freight house, a car house and an engine house, and that said buildings stand partly within and partly without the line of the rail road location ; that in the year 1841, the corporation, being the owners and occupants of the said buildings, the same were taxed, by the assessors of Worcester, their due proportion, with other real estate, to the town and county taxes. It appears that upon an application to the county commissioners, they abated all that part of said tax, which was assessed upon buildings lying within the limits of the location of the road, and that they confirmed the tax upon the buildings or such part of the buildings as lay without the limits of such location. The complaint of the inhabitants of Worcester is, that no abatement ought to have been

made ; that they have a right to tax said corporation for real estate, such as depôts for passengers or merchandize, and buildings used as car and engine houses, although they lie, in whole or 'n part, within the limits of the location of the rail road, and although used for purposes incident to the business of the corporation, as carriers of passengers, and carriers of freight Their claim is, that although the mere franchise or right of way, along the strip of land appropriated to the track of the rail road, may be exempted from taxation, yet that the real estate, con sisting of buildings and other structures connected with it, is not entitled to the same exemption.

This is a question of great importance in its bearing upon the rights and interests of this class of corporations. To determine it properly, it becomes necessary to consider the nature and purposes of these corporations, the franchises granted to them, the duties required of them, and the objects they were intended to accomplish. These are to be sought in the particular act of incorporation, and in the general provisions of law applicable to them. By the act incorporating the Western Rail Road Corporation, *St.* 1833, *c.* 116, § 1, the persons named, their associates, successors and assigns, are made a corporation, to lay out and construct the rail road described ; and for that purpose the corporation were authorized to lay out their road, not exceeding five rods wide, through the whole length, and for the purpose of cuttings, embankments, and procuring stone and gravel, to take as much more land as might be necessary for the proper construction and security of said road ; with a proviso, stipulating for the payment of damages, for private property thus taken. By § 3, the president and directors, in behalf of the corporation, are authorized, not only to provide for locating, constructing and completing said rail road, but for the transportation of persons, goods and merchandize, &c. ; to purchase and hold land, materials, engines, cars and other necessary things, for the use of said road, and for the transportation of persons, goods and merchandize. By § 4, a toll is granted, for the benefit of the corporation, upon all passengers and property of all descriptions, conveyed and transported on said road, with

a qualified power, on the part of the legislature, to limit and regulate such tolls and profits. The act provides that the government of the Commonwealth may, after a certain time, and upon certain terms, purchase the rail road, and all the franchise, property, rights and privileges of the corporation ; that annual reports shall be made on oath, to the legislature, of all their doings, receipts and expenditures ; and that their books shall at all times be open to the inspection of any committee of the legislature appointed for that purpose. The general subject of rail roads, as contained in the Rev. Sts. *c.* 39, §§ 45 – 86, embrace substantially the same provisions.

From this view of the various provisions of the law, by which the rights and duties of the Western Rail Road Corporation are regulated, it is manifest that the establishment of that great thoroughfare is regarded as a public work, established by public authority, intended for the public use and benefit, the use of which is secured to the whole community, and constitutes therefore, like a canal, turnpike or highway, a public easement. The only principle, on which the legislature could have authorized the taking of private property for its construction, without the owner's consent, is, that it was for the public use. Such has been held to be the character of a turnpike corporation, although there the capital is advanced by the shareholders, and the income goes to their benefit. *Commonwealth* v. *Wilkinson*, 16 Pick. 175. It is true, that the real and personal property, necessary to the establishment and management of the rail road, is vested in the corporation ; but it is in trust for the public. The company have not the general power of disposal, incident to the absolute right of property ; they are obliged to use it in a particular manner, and for the accomplishment of a well defined public object ; they are required to render frequent accounts of their management of this property, to the agents of the public ; and they are bound ultimately to surrender it to the public at a price and upon terms established.

Treating the rail road then as a public easement, the works erected by the corporation as public works intended for public use, we consider it well established that to some extent at least,

the works, necessarily incident to such public easement, are public works, and as such exempted from taxation. Such we believe has been the uniform practice in regard to bridges, turnpikes, and highways, and their incidents ; and also in regard to other public buildings and structures of a like kind ; as state houses, forts and arsenals, court houses, jails, churches, town houses, school houses ; and generally to houses appropriated specially to public uses. *Proprietors of Meetinghouse in Lowell* v. *City of Lowell*, 1 Met. 538.

The general principle is not denied in the present case, but the question is, as to the extent and the limits of this exemption from taxation. This limit, we think, is to be ascertained by considering the extent of the public easement intended to be acquired, secured and maintained, and the franchise granted to the preprietors, to enable them to accomplish the proposed end.

By the act, the Western Rail Road Corporation are not only to construct and maintain a road, on which carriages may run, but also to provide for the transportation of persons, goods and merchandize, on such rail road. Such transportation of persons and goods is the object to be accomplished ; and for this purpose they may hold land, materials, engines, cars and other things. Articles so held are appropriated to public use, as incident and necessary to the object to be accomplished. But in regard to the quantity of land to be thus taken and held, the power is not unlimited, because its extent is regulated by the act of incorporation, by which the franchise is granted. The provision in the first section is this : " And for this purpose, the said corporation are authorized to lay out their road, not exceeding five rods wide, through the whole length, and for the purpose of cuttings, embankments, and procuring stone and gravel, may take as much more land as may be necessary for the proper construction and security of said road." To the extent of the five rods, it appears to us the legislature intended that the franchise of this corporation should extend, for any and all purposes incident to the object of its creation. It was contended in argument, that their franchise for public purposes extended only to the use of this strip of land as a way, and that if

they had occasion for buildings and store-houses, as incident to their operations as carriers of persons and merchandize, they were to be regarded in their latter capacity, as carrying on a distinct business, for their own profit, and therefore that such buildings were not to come under the same franchise.   But no such limitation is contained in the act of incorporation, and none such results from the nature of its provisions.   The establishment of the rail track, and the maintenance of engines and cars, for the transportation of persons and goods, are all combined together, as one public object to be attained, and the privileges incident to the one are incident to the other.   No doubt, in practice, the main use of the strip of land of five rods in width, in the greater part of its extent, will be for sustaining the track for the trains to pass over.   But such restriction of its use is not found in the act, and therefore when the corporation have occasion to use any part of such strip of five rods for any of the purposes incident to their creation, it is within their franchise ; and being used to promote the purposes contemplated by the act, it is exempted from taxation, as property appropriated to public use. This is the extent to which they are authorized to *take* land without the consent of the owner, and this therefore, we think, is the extent to which the law regards the land as appropriated to public use.

But in addition to the power of taking lands for the construction and use of a rail road, the corporation are vested with the power of purchasing lands.   The main object of granting this authority, we think, was to enable the corporation to enter into agreements with private proprietors for such lands as they might want, to construct their road upon, so as not to be compelled to take it against the will of the owner, under the provisions of the act.   But though this was the leading purpose, the authority was not limited to that.   It was general in its terms, and authorized the corporation, by purchase, to acquire a title to land, beyond the limit of their location, which might be convenient, though not necessary to the accomplishment of their enterprise. But if the corporation have occasion thus to acquire lands by purchase, and erect buildings beyond their limit of five rods,

(if not necessary, under another provision of the act, for obtaining materials for deep cuts or embankments requiring greater width,) such buildings or other real estate will not be considered as necessarily incident to the rail road and its objects, and therefore will not be exempted from taxation.

So if any part of the lands, lying within the prescribed limit of five rods in width, should be used and appropriated to purposes not incident to the proper construction, maintenance and management of the rail road, or to the use of it by the corporation, as carriers of passengers and goods, we are of opinion that the estate, thus used and appropriated, would be liable to taxation, like other real estate not exempted.

The court are therefore of opinion, that this rail road corporation are not liable to taxation, for the land of the width of five rods, located for the road, nor for any buildings or structures erected thereon, so that they be reasonably incident to the support of the rail road, or to its proper and convenient use for the carriage of passengers and the transportation of commodities ; and that this includes engine and car houses, depôts for the accommodation of passengers, and ware-houses for the convenient reception, preservation and delivery of merchandize, and all goods and articles carried on the road. From this view of the law, it follows that the decision of the county commissioners was right, and that the petition for a writ of *certiorari* must be dismissed.

*Merrick,* for the petitioners.

*Washburn,* for the respondents.